# United States District Court
### EASTERN DISTRICT OF TEXAS
#### SHERMAN DIVISION

| | | |
|---|---|---|
| WILD CARD, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:25-cv-1216 |
| | § | Judge Mazzant |
| PANINI AMERICA, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Panini America's Motion to Transfer Venue to the Northern District of Texas (the "Motion") (Dkt. #11). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This is an antitrust case involving allegations that Panini America, Inc. ("Defendant") sought to exclude Wild Card, Inc. ("Plaintiff") from the premium sports trading card market by leveraging its market power and pressuring distributors not to carry Plaintiff's products (Dkt. #1 at ¶¶ 1, 22). Plaintiff is a Tennessee corporation with its principal place of business in Nolensville, Tennessee, while Defendant is a Delaware corporation with its principal place of business in Irving, Texas (Dkt. #1 at ¶¶ 4–5). The market at issue primarily operates through hobby-channel distributors, which distribute trading cards, while dominant suppliers control product allocation and, in turn, distributors' inventory (Dkt. #1 at ¶ 11).

On October 21, 2021, Defendant convened a closed-door annual meeting with its national hobby-channel distributors at its headquarters in Irving, Texas (Dkt. #1 at ¶ 22). Plaintiff alleges that, during this meeting, Defendant warned distributors that carrying Plaintiff's cards would

result in consequences relating to allocations, programs, and access (Dkt. #1 at ¶ 22). Following the meeting, four major premium card distributors—including, Southern Hobby, Magazine Exchange, Hamps Supply, and Steel City (collectively, the "Named Distributors")—refused Plaintiff's allocations and previously committed shipments (Dkt. #1 at ¶ 24).

On November 6, 2025, Plaintiff filed this action against Defendant alleging: (1) violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; (2) violation of Section 3 of the Clayton Act, 15 U.S.C. § 14; and (3) violation of Chapter 15 of the Texas Business and Commerce Code, TEX. BUS. & COM. CODE ANN. § 15.05 (*See* Dkt. #1 at ¶¶ 46–86).

On January 23, 2026, Defendant filed the instant Motion seeking to transfer this action to the Dallas Division of the Northern District of Texas under 28 U.S.C. § 1404(a) (Dkt. #11). On February 20, 2026, Plaintiff responded to Defendant's Motion (Dkt. #17). On March 13, 2026, Defendant filed its Reply in Support of its Motion (Dkt. #18). On April 3, 2026, Plaintiff filed a Sur-Reply (Dkt. #28).[1] On April 13, 2026, at Defendant's request, the Court held a hearing on the Motion pursuant to the Court's Standing Order Regarding Courtroom Opportunities for Younger Attorneys. The Motion is now ripe for adjudication.

## LEGAL STANDARD

Section 1404 provides the following: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all the parties consented." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to

---

[1]  Local Rule CV-7(f) provides that sur-replies must be "filed within seven days from the date the reply is served," and that "(a)bsent leave of court, no further submissions on the motion are allowed." LOCAL RULE CV-7(f). Here, Plaintiff's Sur-Reply was filed more than seven days from the date the reply was filed. Despite it being untimely, the Court considered Plaintiff's Sur-Reply.

adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "The purpose of section 1404 is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen*, 376 U.S. at 616 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26, 27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. Once that threshold inquiry is met, the Fifth Circuit has held the determination of convenience turns on eight private and public interest factors, where "[n]o factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

The private interest factors include: (1) relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*] (en banc). The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the governing law; and (4) avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id*. These factors are neither exhaustive nor exclusive. *Id*.

The party seeking transfer of venue must show good cause for the transfer. *Id*. The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id*. The plaintiff's choice of venue is not a factor in this analysis, but, rather contributes to the defendant's burden to show good cause for the transfer. *Id*. at 313, 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. at 315. And while the multi-factor analysis is informative, ultimately, "the district court has broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (per curiam) (internal quotation marks omitted) (quoting *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987) (per curiam)).

## ANALYSIS

Defendant argues that this case should be transferred to the Dallas Division of the Northern District of Texas under § 1404(a) (Dkt. #11). Neither party disputes that this case could have been filed there. The Court therefore turns to the second part of the transfer inquiry: whether transfer is appropriate under the private and public interest factors. As explained below, the Court finds that the factors weigh in favor of transferring the case.

### I.    Private Interest Factors

The Court begins by addressing the private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial

of a case easy, expeditious, and inexpensive. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

### A.    The Relative Ease of Access to Sources of Proof

This first private interest factor "focuses on the location of 'documents and physical evidence relating to the [case].'" *TikTok*, 85 F.4th at 358 (quoting *Volkswagen II*, 545 F.3d at 316). This relative ease of access to sources of proof is still a relevant part of the transfer analysis despite technological advances that have made transporting large volumes of documents across the country more convenient. *Volkswagen II*, 545 F.3d at 316. "That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *TikTok*, 85 F.4th at 358. "But when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *Id.* (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)).

In this case, Plaintiff complains of Defendant's alleged anti-competitive scheme and exclusionary tactics to manipulate the sports trading card market in its favor (*See* Dkt. #1). Plaintiff contends that Defendant's wrongful conduct culminated at a closed-door meeting between Defendant and various distributors carrying Plaintiff's product (Dkt. #1 at ¶ 22). Defendant argues that "any documents, presentation decks, or physical evidence" related to this distributor meeting, along with any relevant evidence regarding its program access or allocation policies, would be located at its headquarters in Irving, Texas, which is in the Northern District of Texas (Dkt. #11 at p. 11; Dkt. #11-1 at ¶¶ 5–6; Dkt. #18 at p. 11). Notably, Plaintiff does not identify any evidence in the Eastern District of Texas, which would seem to weigh in favor of transfer (*See* Dkt. #11 at p. 11). *See TikTok*, 85 F.4th at 358 ("[T]his factor weighs in favor of transfer where the current district lacks any evidence relating to the case." (citing *Volkswagen II*, 545 F.3d at 316)).

However, Plaintiff asserts that the existence of physical evidence in the Northern District of Texas "does not mean it is unavailable in readily accessible electronic form in the Eastern District of Texas" (Dkt. #17 at p. 8). Defendant does not rebut the assertion that electronic documents would be "equally accessible in either forum." *See TikTok*, 85 F.4th at 358 (internal quotation marks omitted) (quoting *Planned Parenthood*, 52 F.4th at 630). Thus, the Court finds that this factor weighs only slightly in favor of transfer because some documents are located in the Northern District of Texas but are equally accessible in either forum.

### B.    The Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure the attendance of witnesses. *TikTok*, 85 F.4th at 360. This factor "receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Id.* (internal quotations marks omitted) (quoting *Planned Parenthood*, 52 F.4th at 630–31). Here, Defendant does not allege or show that any witness would be unwilling to testify. *See TikTok*, 85 F.4th at 360. In the absence of such an argument, the Court finds that this factor is neutral.

### C.    The Cost of Attendance for Willing Witnesses

"The third private factor, which considers the conveniences for witnesses who attend willingly, has been described as the most important factor." *Seagen Inc. v. Daiichi Sankyo Co., Ltd.*, 546 F. Supp. 3d 515, 531 (E.D. Tex. 2021). In considering the availability and convenience of witnesses, the Court must concentrate primarily upon the availability and convenience of key witnesses. *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002). The Fifth Circuit uses a 100-mile threshold to assess this factor. *TikTok*, 85 F.4th at 361 (citing *Volkswagen II*, 545 F.3d at 317). "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the

6

witnesses increases in direct relationship to the additional distance to be traveled." *Id.* While the Court can consider costs imposed on witnesses when the proposed transfer is within the 100-mile threshold, "this factor has greater significance when the distance is greater than 100 miles." *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) (per curiam). Finally, the convenience of party witnesses is given relatively little weight when compared to non-party witnesses. *United States ex rel. Ferguson v. Lockheed Martin Corp.*, No. 4:20-CV-097, 2023 WL 8719443, *4 (E.D. Tex. Dec. 18, 2023).

The Dallas and Sherman courthouses sit less than 100 miles apart from each other, so this factor, while relevant, receives less significance. *See id.* Defendant argues that this factor weighs in favor of transfer since none of the potential witnesses mentioned in the Complaint live in the Eastern District of Texas but three of the potential witnesses reside in cities within the Northern District of Texas (Dkt. #11 at p. 12; Dkt. #18 at p. 12). In response, Plaintiff argues that because half of the witnesses reside outside of Texas, "there is no meaningful difference in the cost of attendance for the witnesses between the two districts" (Dkt. #17 at p. 9).

The representatives of the Named Distributors, which allegedly refused Plaintiff's allocations and previously committed shipments, are potential non-party witnesses (Dkt. #1 at ¶ 24). Three of the four Named Distributors are located outside of Texas (Dkt. #1 at ¶ 24; Dkt. #11-1 at ¶¶ 8–12). The fourth Named Distributor is located in Dallas, Texas and its representative, who attended the distributor meeting, lives in Highland Park, Texas (Dkt. #11-1 at ¶¶ 11). Finally, Defendant's Vice President of Sales, a party witness whom Plaintiff alleges warned distributors not to carry its products, resides in Aledo, Texas (Dkt. #1 at ¶ 22; Dkt. #11-1 at ¶ 7).

With respect to the three Named Distributors located outside Texas, the Court finds that any difference in the burden of traveling to the Sherman courthouse as opposed to the Dallas courthouse is negligible (Dkt. #11-1). *See, e.g.*, *Vargas v. Seamar Divers Int'l, LLC*, No. 2:10-CV-178-TJW, 2011 WL 1980001, at *7 (E.D. Tex. May 20, 2011) (finding the difference in convenience negligible when witnesses resided over 100 miles from both parties' preferred venues); *Erickson v. Exxon Mobil Corp.*, No. 3:24-CV-363, 2025 WL 1047099, at *2 (S.D. Tex. Apr. 8, 2025) (finding that whether in Galveston or Houston, witnesses must travel some distance by car from the airport and that any difference in burden is negligible).

Next, the Named Distributor and its representative located in Dallas and Highland Park, Texas respectively, would face slightly less inconvenience traveling to the Dallas courthouse compared to the Sherman courthouse (Dkt. #11-1 at ¶ 11). Finally, while given less weight as a party witness, Defendant's Vice President of Sales would similarly face slightly less inconvenience traveling to the Dallas courthouse instead of the Sherman courthouse from his residence in Aledo, Texas (Dkt. #11-1 at ¶ 7). *See Holloway v. City of Fort Worth*, No. 4:23-CV-487, 2024 WL 96666, at *6 (E.D. Tex. Jan. 9, 2024) ("Even [the party witness] would experience a lesser inconvenience traveling to the Fort Worth courthouse than to the Sherman courthouse because the Fort Worth courthouse is closer to his residence."). Accordingly, the Court finds this factor slightly favors transfer.

### D.  Other Practical Problems

The fourth private interest factor is a catchall where the Court "considers 'all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *TikTok*, 85 F.4th at 362 (quoting *Volkswagen II*, 545 F.3d at 315). In particular, the presence of parallel litigation involving the same or similar issues may create practical challenges that weigh in favor of or against

8

transfer. *Ferguson*, 2023 WL 8719443, at *5. This factor considers whether related cases are pending and their impact on judicial economy. *Id.* (citing *ACQIS LLC v. EMC Corp.*, 67 F. Supp. 3d 769, 777–78 (E.D. Tex. 2014)).

Plaintiff argues that judicial economy weighs against transfer because of a prior suit before the Court (the "AAA Sports Lawsuit") (Dkt. #17 at pp. 4–6).[2] Plaintiff contends the AAA Sports Lawsuit involved the same defendant and similar product markets, giving the Court "substantial familiar with the issues in this case and the sports trading card industry, generally (Dkt. #17 at pp. 4–6). Plaintiff goes on to explain that in assessing the copyright infringement claims asserted in the AAA Sports Lawsuit, the Court developed "institutional knowledge" of this "niche industry;" namely, "how sports trading card products are developed and commercialized, how value and demand are created for premium products, and how industry-specific licensing and authorization relationships shape competition in primary markets" (Dkt. #17 at p. 5; Dkt. #28 at pp. 3–4). Defendant argues that any familiarity the Court has from presiding over the AAA Sports Lawsuit is outweighed by the fact that the Eastern District of Texas has "no rational relationship to the events giving rise to this suit" (Dkt. #18 at pp. 13–14).

The Court agrees with Defendant; specifically, the Court is not convinced that presiding over the AAA Sports Lawsuit makes trial of the instant case easier, more expeditious, or inexpensive. *TikTok*, 85 F.4th at 362. First, the instant action was brought by a different plaintiff and the wrongful conduct implicates new witnesses, the Named Distributors (Dkt. #1 at ¶ 22; Dkt. #11-1). Second, in this case, Plaintiff has alleged an antitrust scheme, while the plaintiff in the

---

[2] The AAA Sports Lawsuit refers to *E. Hanlin Bavely, Chapter 7 Trustee of AAA Sports, Inc. v. Panini Am., Inc.*, Case No. 4:22-cv-93, filed on Feb. 10, 2022. A week before the Final Pretrial Conference, on August 23, 2023, the parties filed a Notice of Settlement, and the AAA Sports Lawsuit was closed (AAA Sports Lawsuit, Dkt. #249).

AAA Sports Lawsuit asserted copyright infringement claims (*Compare* Dkt. #1 *with* AAA Sports Lawsuit, Dkt. #1). Third, the AAA Sports Lawsuit was closed two and a half years ago so there is "little to no impact on the judicial economy because the judicial resources are already expended." *Ferguson*, 2023 WL 8719443, at *5; *see also Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 444 (D. Del. 2015) (finding that actions that were now dismissed should not be considered when analyzing this fourth private interest factor). Moreover, because of this lapse in time since the AAA Sports Lawsuit was closed, the Court would have to become familiar with all matters again, a process that another judge "is equally equipped to manage." *Odom v. BP Expl. & Prod. Inc.*, No. CV 16-15974, 2017 WL 11221334, at *2 (E.D. La. Mar. 15, 2017). Accordingly, the Court finds that this factor is neutral.

## II.     Public Interest Factors

The Court next turns to public interest factors: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will consider each factor in turn.

### A.     The Administrative Difficulties Flowing from Court Congestion

The first public interest factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020) (unpublished) (citing *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963)). "One element to be considered stems from the administrative difficulties that arise when courts become congested with litigation that should have been handled at its place of origin." *Alaniz v. Liberty Life Assurance Co. of Bos.*, No. 1:18-CV-297, 2018 WL 11428242, at *7 (E.D. Tex. Oct. 4, 2018).

Defendant contends that this factor favors transfer because not only is the median time from filing to resolution shorter in the Northern District of Texas, but the judges in the Eastern District carry significantly heavier caseloads (Dkt. #11 at p. 13; Dkt. #18 at p. 13). Defendant further argues that "[t]he Court should not be forced" to keep a case that "the Eastern District has no stake in adjudicating" (Dkt. #11 at p. 13). Plaintiff responds that although the median time from filing to disposition was shorter in the Northern District of Texas, transfer is unlikely to expedite the case (Dkt. #17 at p. 9). Specifically, Plaintiff notes that the Eastern District of Texas has a shorter time from filing to trial in civil cases, has fewer civil cases older than three years, and has not experienced vacant judgeship months like the Northern District of Texas (Dkt. #28 at p. 4).

As of December 31, 2025, the median number of months from filing to disposition for civil cases is 7.2 months in the Eastern District of Texas and 5.8 months in the Northern District of Texas.[3] The median number of months from filing to trial for civil cases is 24.0 months in the Eastern District of Texas and 24.4 months in the Northern District of Texas.[4] Further, in the Eastern District of Texas, there were 6,895 cases pending, with an average of 862 cases per each district judge.[5] In contrast, in the Northern District of Texas, there were 6,432 cases pending, with an average of 536 cases per each district judge.[6]

The Court is not convinced its docket is less congested than the dockets of the courts in the Dallas Division of the Northern District of Texas, as Plaintiff suggests. While the Eastern District of Texas reflects a marginally shorter median time from filing to trial, the Court sits in the

---

[3] UNITED STATES COURTS, *U.S. District Court — Judicial Caseload Profile*, 2020-2025 (April 15, 2026), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pd.
[4] *Id.*
[5] *Id.*
[6] *Id.*

busiest division of the Eastern District of Texas, insomuch that the district is operating under an adjusted case assignment system that distributes the Sherman Division's caseload throughout the entire district. *See* General Order No. 26-03, General Order Assigning Civil and Criminal Actions, U.S. District Court, Eastern District of Texas (April 1, 2026). Accordingly, this factor favors transfer.

### B.    The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized disputes decided at home. *Volkswagen II*, 545 F.3d at 315. "Important considerations include the location of the injury, witnesses, and the [p]laintiff's residence." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022). Also, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (internal quotation marks omitted) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

Further, the Court should "look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435). "[T]he place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (internal quotation marks omitted) (quoting *Def. Distributed*, 30 F.4th at 435). "[T]his factor weighs heavily in favor of transfer [when] . . . there is no relevant factual connection to the [transferor district]." *Id.* (internal quotation marks omitted) (quoting *Volkswagen II*, 545 F.3d at 317–18). "Also, this factor can weigh against transfer when the 'citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district].'" *Id.* (quoting *Planned Parenthood*, 52 F.4th at 632).

12

Defendant contends that this factor weighs in favor of transfer because the Complaint alleges no facts tying this case to the Eastern District of Texas, as neither Plaintiff or Defendant are located here, no party or non-party witnesses are located here, and the purported distributor meeting at the center of the antitrust scheme did not occur here (*See* Dkt. #11 at pp. 9–10; Dkt. #18 at pp. 5–9). In response, Plaintiff argues that the alleged anticompetitive tactics that gave rise to this action have a nationwide scope, and Defendant operates through national distribution channels, giving the Eastern District a legitimate interest and, at a minimum, rendering this factor neutral (*See* Dkt. #17 at pp. 6–8; Dkt. #28 at p. 5).

In support of its position, Plaintiff relies on *Rochester Med. Corp. v. C.R. Bard, Inc.*, No. 5:04-CV-60, 2005 WL 8161204 (E.D. Tex. Feb. 28, 2005) (Dkt. #17 at pp. 7–8). The decision in *Rochester Med. Corp.* involved an antitrust medical device sales dispute centered on group purchasing organization contracts. *Id.* at *1. The transferee district retained a strong local interest because, unlike here, there was no centralized location where the conduct giving rise to the suit occurred. *See id.* at *4. Further, the plaintiff identified specific acts by both the plaintiff and defendant in the Eastern District of Texas that were essential to their ordinary business operations. *Id.* at *1. The plaintiff also offered evidence that much of the alleged anticompetitive conduct at issue in the case was directed at consumers in the Eastern District of Texas, which is not the case here. *See id.* The Court finds that this case does not stand for Plaintiff's proposition that the nationwide effects of an anticompetitive scheme are sufficient to establish a localized interest in any forum. *See id.* at *4. Thus, the Court will not adopt that view here.

The Court finds that the second public interest factor, the local interest in having localized disputes decided at home, weighs heavily in favor of transfer as there is no relevant factual

13

connection to the Eastern District of Texas. *See TikTok*, 85 F.4th at 364 (explaining that the second factor "weighs heavily in favor of transfer when there is no relevant factual connection to the transferor district." (citation modified)). Indeed, not only does Plaintiff not reside in the Eastern District of Texas, but neither party has been able to identify even a single witness that lives within this district (*See* Dkt. #1 at ¶ 4; Dkt. #11-1 at ¶¶ 7–12). *See Volkswagen II*, 545 F.3d at 317 (finding that the second factor weighs heavily in favor of transfer where, as here, all of the plaintiffs and witnesses in the case reside in districts other than the Eastern District of Texas). Importantly, the incident giving rise to this action occurred in the Northern District of Texas at Defendant's headquarters during a closed-door meeting where Defendant allegedly threatened distributors carrying Plaintiff's product (Dkt. #1 at ¶¶ 22–31).

While Plaintiff argues that the effects of the conduct at the meeting "reach far beyond the Northern District [of Texas], affecting the sports trading card market across the United States, including in this District," the Court finds this argument unavailing (Dkt. #17 at pp. 6–7). Under that reasoning, at a minimum, the Eastern District's connection to the controversy is identical to that of any other jurisdiction. *See Volkswagen II*, 545 F.3d at 318 (noting that it "stretches logic" to conclude that a district has an interest in a case merely because the product is available there, as that rationale "could apply virtually to any judicial district or division in the United States."). Accordingly, the Court finds this factor weighs heavily in favor of transfer.

### C.     The Familiarity of the Forum with Governing Law

This third public interest factor "considers the current district's 'familiarity with the law that will govern the case.'" *TikTok*, 85 F.4th at 365 (quoting *Volkswagen II*, 545 F.3d at 315). "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" *TikTok*, 85 F.4th at 365 (quoting *Radmax*, 720 F.3d at 289). The Court finds that

both the Eastern and Northern Districts of Texas are equally capable of applying the relevant law and thus this factor is neutral (Dkt. #11 at p. 8 n.1; Dkt. #17 at p. 6). Accordingly, this factor is neutral.

### D.      Avoidance of Conflict of Law

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" *Def. Distributed*, 30 F.4th at 436 (quoting *Volkswagen II*, 545 F.3d at 315). Here, conflict of laws is not in dispute (*See* Dkt. #11 at p. 8 n.1; Dkt.  #17 at p. 6). Accordingly, this factor is neutral.

* * *

In sum, the Court finds that four factors weigh in favor of transfer, while four factors are neutral. The Court acknowledges that the Dallas Division of the Northern District of Texas and the Sherman Division of the Eastern District of Texas border each other, meaning there is little to no inconvenience from having to litigate here instead of there. However, the Dallas Division of the Northern District of Texas is the clearly more convenient forum when considering no party resides in this district and there is no relevant connection between the events giving rise to this litigation and this district. Accordingly, Defendant's Motion seeking to transfer the case under § 1404(a) should be **GRANTED**.

### III.   Plaintiff's Choice of Venue

The final issue for the Court to address is whether the Court should defer to Plaintiff's choice of venue. Plaintiff argues that in antitrust cases, a plaintiff's forum selection should be afforded significant deference (Dkt. #17 at p. 4). In response, Defendant argues that the nature of an antitrust lawsuit does not alter the § 1404(a) transfer analysis (Dkt. #18 at p. 10).

15

Antitrust lawsuits against corporations, like the instant case, "may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business." 15 U.S.C. § 22. The Supreme Court has indicated that § 1404(a) is applicable to antitrust cases just like any other civil case. *United States v. Nat'l City Lines, Inc.*, 337 U.S. 78, 84 (1949). Thus, although an antitrust plaintiff may choose from a broad range of venues as to where to file suit, the convenience of the forum may still be scrutinized under § 1404(a) and transfer may be permissible. *Id.*; *JM Comput. Servs., Inc. v. Schlumberger Techs., Inc.*, 886 F. Supp. 358, 359 (S.D.N.Y. 1995) (collecting cases) ("[C]ourts have specifically rejected the argument that a § 1404(a) transfer is inappropriate in antitrust cases.").

In support of its position that an antitrust plaintiff's choice of forum is entitled to heightened deference, Plaintiff directs the Court to four cases (Dkt. #17 at p. 4; Dkt. #28 at p. 3). First, *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392 (S.D. Tex. 1992). In that antitrust action, the court denied a motion to transfer venue under § 1404(a), finding the defendant had not demonstrated that a change of venue was warranted. *Cont'l Airlines*, 805 F. Supp. at 1396. The court also noted that the following factors suggested that "greater deference" should be shown towards the plaintiffs' choice of forum: (1) at least one of the plaintiffs resided in that district; and (2) "at least one court has held that the plaintiff's choice of forum is entitled to particular deference in antitrust cases." *Id.* (citing *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 711 F. Supp. 730, 735 (S.D.N.Y. 1989)).

Plaintiff further relies on the *Expoconsul* case. In that case, a court in the Southern District of New York denied a defendant's motion to dismiss a complaint based on improper venue or alternatively, to transfer venue to the neighboring District of Connecticut under § 1404(a).

16

*Expoconsul*, 711 F. Supp. at 731. The plaintiff's claims centered around the defendant's alleged intent to monopolize the market for building design and construction industry tradeshows held in New York City. *Id*. at 732. The defendant argued Connecticut was its primary location. *Id*. at 735. The Court found the defendant had not met its burden of showing that the balance of convenience weighed strongly in favor of the District of Connecticut, considering the defendant traveled to and transacted a significant amount of business in New York without any burden. *Id*. at 733–34.

Plaintiff next relies on *Lanier Bus. Prods. v. Graymar Co.*, 355 F. Supp. 524 (D. Md. 1973). In that case, the defendant asserted counterclaims for violations of antitrust laws. *Lanier*, 355 F. Supp. at 525. The court ultimately denied the plaintiff's motion to transfer venue reasoning that, "[t]his is not a case presenting a forum totally irrelevant to the subject matter of litigation," and "[w]here the balance of convenience and interest of justice are in substantial equilibrium, the Court must deny the motion to transfer." *Id*. at 528–29.

Finally, Plaintiff relies on *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375 (W.D. La. 1996). In that case, the court noted, "[t]here is authority for the proposition that the defendants' § 1404(a) burden is 'especially heavy' in antitrust suits because the plaintiff's choice of forum is entitled to a particular respect." *Icon*, 921 F. Supp. at 385 (quoting *Expoconsul,* 711 F. Supp. at 735). However, that court found "it unnecessary to apply that rule," reasoning that "the defendants still have not made the 'clear cut' showing necessary under § 1404(a)." *Id*. Thus, because the court could not find the convenience factors favored transferring, it denied the defendants' motion to transfer venue and maintained the plaintiff's forum selection. *Id*. at 384.

In each of these four cases referenced in Plaintiff's Response and Sur-Reply, the courts considered the convenience of the dueling forums and concluded that the moving party had not

17

met its burden to show transfer was warranted under § 1404(a). Because inconvenience had not been demonstrated, those courts found no reason to disturb the antitrust plaintiff's chosen venue.[7] *See Cont'l Airlines*, 805 F. Supp. at 1396; *see Expoconsul,* 711 F. Supp. at 733–34; *see Lanier*, 355 F. Supp. at 528–29; *see Icon*, 921 F. Supp. at 384–85.

That is not the case here. The Court has determined that four of the private and public factors weigh in favor of transfer under § 1404(a) and four were neutral. Of those that tipped in favor of transferring, the most prominent was that the Eastern District of Texas does not have a strong local interest in deciding this case. Specifically, Plaintiff alleges the conduct giving rise to this suit occurred at an annual distributor meeting at Defendant's headquarters in the Northern District of Texas (Dkt. #1 at ¶¶ 22–31). None of the parties or witnesses reside in this district. Plaintiff did not identify any specific acts essential to the Defendant's business that occurred in this district. And none of the alleged anticompetitive conduct at issue was directed at consumers in this district. As such, the Court is left with "a case presenting a forum totally irrelevant to the subject matter of litigation." *Lanier Bus. Prods.*, 355 F. Supp. at 528.

Accordingly, Plaintiff's forum selection need not be afforded greater deference or supersede the § 1404(a) analysis, and the Court will exercise its discretion to transfer this case to the Dallas Division of the Northern District of Texas pursuant to 28 U.S.C. § 1404(a).

---

[7] Further, a Fifth Circuit panel recently declined an invitation to adopt the contention that the Clayton Act "amplifies" the ordinary deference that a plaintiff's choice of forum ordinarily receives. *In re Google, L.L.C.*, No. 25-40788, 2026 WL 934924, at *3 (5th Cir. Apr. 7, 2026). In its reasoning, the Fifth Circuit stated the following: "The liberal venue provisions of the Clayton Act allow a plaintiff to select from a broad range of possible forums. But the appropriateness of their selection is still measured by the standards of § 1404(a)." *Id.* (citing *Ex parte Collett*, 337 U.S. 55 (1949)). Notably, the dissent does not address the majority's position on this issue. *Id.* (Higginson, J., dissenting). As such, to the extent *Cont'l Airlines* interprets *Expoconsul* to *require* courts to extend a heightened deference to an antitrust plaintiff's chosen venue, the Court disagrees.

## CONCLUSION

It is therefore **ORDERED** that Defendant Panini America's Motion to Transfer Venue (Dkt. #11) is hereby **GRANTED**.

It is further **ORDERED** that this case is hereby **TRANSFERRED** to the United States District Court for the Northern District of Texas, Dallas Division.

**IT IS SO ORDERED.**

**SIGNED this 17th day of April, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE